UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ANGELA WALDO, individually
and as Natural Parent of
D.P.,

         Plaintiff,

   v.

ELI LILLY & COMPANY,

         Defendant.

No.  CIV. S-13-0789 LKK/EFB

**ORDER**

    Plaintiff Angela Waldo, in her individual capacity and on behalf of her son, D.P., sues defendant Eli Lilly and Company, alleging that D.P. was born with various heart defects as a result of Waldo's ingestion of Prozac during pregnancy.

    Eli Lilly moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion will be granted in part and denied in part.

**I.   BACKGROUND**

    The following allegations are taken from the operative complaint. (ECF No. 1.)

1

1    In 2001, Waldo was prescribed and took Prozac for

2 depression. She ended her usage when she discovered that she was

3 three months pregnant, because she did not want to harm her

4 fetus. (Complaint ¶ 20, ECF No. 1.)

5    On March 1, 2002, after 35 weeks' gestation, Waldo gave

6 birth to D.P. in Folsom, California. (Id. ¶ 21.) D.P. was

7 diagnosed with a hole in the bottom of the heart chamber, a heart

8 murmur, and a ventricular septal defect. (Id. ¶ 22.)

9    On February 26, 2007, D.P. underwent surgery to repair the

10 hole in his heart chamber. (Id. ¶ 24.)

11    In January 2011, D.P was diagnosed with leaking of the

12 aortic valve. (Id. ¶ 23.)

13    Due to these birth defects, D.P. regularly visits a

14 cardiologist and other health care specialists. (Id. ¶ 25.)

15    Waldo alleges that Prozac is a selective serotonin reuptake

16 inhibitor ("SSRI") marketed primarily as an antidepressant

17 medication. Eli Lilly designed, manufactures, and markets Prozac.

18 (Complaint ¶¶ 14, 16.)

19    Prozac can cause serious birth defects when ingested during

20 pregnancy, including, but not limited to, heart defects, limb

21 deformations, spina bifida, cleft palates, and persistent

22 pulmonary hypertension of the newborn. (Id. ¶ 26.)

23    Eli Lilly did not test Prozac for safety or efficacy in

24 pregnant women. In its promotional activities, Eli Lilly did not

25 discourage pregnant women from using Prozac. Through a variety of

26 methods, Eli Lilly encouraged doctors to prescribe Prozac to

27 women of childbearing age, women who were trying to conceive, and

28 to pregnant women. (Id. ¶ 29.)

1  Eli Lilly did not add a warning regarding cardiovascular

2  birth defects to the Prozac label until 2011. (Id. ¶ 36.)

3  Waldo alleges, on information and belief, that Eli Lilly

4  knew, or should have known, about the adverse side effects of

5  Prozac as early as 1987, but failed to adequately warn consumers,

6  physicians, and the U.S. Food and Drug Administration ("FDA").

7  (Id. ¶ 27.) Waldo further alleges, on information and belief,

8  that Eli Lilly was on notice regarding numerous studies that

9  demonstrated significant harm to fetuses when an SSRI was

10  ingested during pregnancy, including increased mortality and

11  cardiac malformations. (Id. ¶ 28.)

12  Waldo sues under California law, pleading sixteen causes of

13  action that sound in strict liability, negligence, warranty,

14  fraud, and unjust enrichment. Eli Lilly moves to dismiss the

15  complaint in its entirety.

16  **II.   STANDARD**

17  A dismissal motion under Federal Rule of Civil

18  Procedure 12(b)(6)[1] challenges a complaint's compliance with the

19  federal pleading requirements. Under Rule 8(a)(2), a pleading

20  must contain a "short and plain statement of the claim showing

21  that the pleader is entitled to relief."  The complaint must give

22  the defendant "'fair notice of what the . . . claim is and the

23  grounds upon which it rests.'" <u>Bell Atlantic v. Twombly</u>, 550 U.S.

24  544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47

25  (1957)).

26

27  [1] Hereinafter, the term "Rule" refers to the applicable
Federal Rule of Civil Procedure.

28

3

1   To meet this requirement, the complaint must be supported by

2   factual allegations. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

3   Moreover, this court "must accept as true all of the factual

4   allegations contained in the complaint." <u>Erickson v. Pardus</u>, 551

5   U.S. 89, 94 (2007).[2]

6   "While legal conclusions can provide the framework of a

7   complaint," neither legal conclusions nor conclusory statements

8   are themselves sufficient, and such statements are not entitled

9   to a presumption of truth. <u>Iqbal</u>, 556 U.S. at 679. <u>Iqbal</u> and

10  <u>Twombly</u> therefore prescribe a two-step process for evaluation of

11  motions to dismiss. The court first identifies the non-conclusory

12  factual allegations, and then determines whether these

13  allegations, taken as true and construed in the light most

14  favorable to the plaintiff, "plausibly give rise to an

15  entitlement to relief." <u>Iqbal</u>, 556 U.S. at 679.

16  "Plausibility," as it is used in <u>Twombly</u> and <u>Iqbal</u>, does not

17  refer to the likelihood that a pleader will succeed in proving

18  the allegations. Instead, it refers to whether the non-conclusory

19  factual allegations, when assumed to be true, "allow[] the court

20  to draw the reasonable inference that the defendant is liable for

21  the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678.  "The

22  plausibility standard is not akin to a 'probability requirement,'

23  but it asks for more than a sheer possibility that a defendant

24  _____

25  [2] Citing <u>Twombly</u>, 550 U.S. at 555-56, <u>Neitzke v. Williams</u>,
    490 U.S. 319, 327 (1989) ("What Rule 12(b)(6) does not
26  countenance are dismissals based on a judge's disbelief of a
    complaint's factual allegations"), and <u>Scheuer v. Rhodes</u>, 416
27  U.S. 232, 236 (1974) ("[I]t may appear on the face of the
    pleadings that a recovery is very remote and unlikely but that is
28  not the test" under Rule 12(b)(6)).

1   has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557).[3] A

2   complaint may fail to show a right to relief either by lacking a

3   cognizable legal theory or by lacking sufficient facts alleged

4   under a cognizable legal theory. Balistreri v. Pacifica Police

5   Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

6   **III.   ANALYSIS**

7       When the court sits in diversity, it must ordinarily apply

8   the substantive law of the forum in which it is located. Erie

9   R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). California

10  substantive law therefore governs.

11              **A. Design Defect – Strict Liability**

12      Waldo's first cause of action alleges strict liability under

13  a design defect theory.

14      Eli Lilly moves to dismiss, contending that California does

15  not recognize strict liability for defects in the design of

16  prescription drugs.

17

18      [3] Twombly imposed an apparently new "plausibility" gloss on
    the previously well-known Rule 8(a) standard, and retired the
19  long-established "no set of facts" standard of Conley v. Gibson,
    355 U.S. 41 (1957), although it did not overrule that case
20  outright. See Moss v. U.S. Secret Service, 572 F.3d 962, 968 (9th
    Cir. 2009) (the Twombly Court "cautioned that it was not outright
21  overruling Conley[,]" although it was retiring the "no set of
    facts" language from Conley). The Ninth Circuit has acknowledged
22  the difficulty of applying the resulting standard, given the
    "perplexing" mix of standards the Supreme Court has applied in
23  recent cases. See Starr v. Baca, 652 F.3d 1202, 1215 (9th Cir.
    2011) (comparing the Court's application of the "original, more
24  lenient version of Rule 8(a)" in Swierkiewicz v. Sorema N.A., 534
    U.S. 506 (2002) and Erickson v. Pardus, 551 U.S. 89 (2007) (per
25  curiam), with the seemingly "higher pleading standard" in Dura
    Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005), Twombly and
26  Iqbal), cert. denied, 132 S. Ct. 2101 (2012). See also Cook v.
27  Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (applying the "no set
    of facts" standard to a Section 1983 case).

28

1     The California Supreme Court has held that a product is

2  defectively designed "if it failed to perform as safely as an

3  ordinary consumer would expect when used as intended or

4  reasonably foreseeable, or if, on balance, the risk of danger

5  inherent in the challenged design outweighs the benefits of the

6  design." Brown v. Superior Court, 44 Cal. 3d 1049, 1057 (1988)

7  (citing Barker v. Lull Eng'g Co., 20 Cal. 3d 413, 430 (1978)).

8  But that Court has declined to extend the defective design

9  standard to cases involving prescription drugs. See Brown, 44

10  Cal. 3d at 1061 ("[A] drug manufacturer's liability for a

11  defectively designed drug should not be measured by the standards

12  of strict liability[.]"); accord Anderson v. Owens-Corning

13  Fiberglas Corp., 53 Cal. 3d 987, 995 (1991) ("[A] manufacturer of

14  prescription drugs is exempt from strict liability for defects in

15  design[.]"). Manufacturer liability for a design defect may lie

16  only on a negligence theory. Brown, 44 Cal. 3d at 1065.

17     The cases cited by Waldo in opposition are inapt, as they

18  address strict liability for failure to warn and/or for

19  manufacturing defects, rather than for design defects.

20     As California law does not recognize strict liability for

21  pharmaceutical manufacturers under a design defect theory,

22  Waldo's first cause of action must be dismissed with prejudice.

23           **B.  Manufacturing Defect – Strict Liability**

24     Waldo's second cause of action alleges strict liability

25  under a manufacturing defect theory.

26     "[A] defective product is one that differs from the

27  manufacturer's intended result or from other ostensibly identical

28  units of the same product line." Barker, 20 Cal. 3d at 429. Under

6

1  an alternate formulation of this test, "[a] manufacturing defect

2  exists when an item is produced in a substandard condition."

3  McCabe v. American Honda Motor Co., 100 Cal. App. 4th 1111, 1120

4  (2002) (citing Barker).

5      Eli Lilly moves to dismiss the cause of action as

6  inadequately pled, contending that Waldo fails to identify or

7  explain the nature of the alleged defect. In support, it cites

8  Lucas v. City of Visalia, 726 F. Supp. 2d 1149 (E.D. Cal. 2011)

9  (Ishii, J.), in which a manufacturing defect claim against a

10  taser manufacturer was dismissed under Rule 12(b)(6) because the

11  plaintiff failed to "identify/explain how the taser weapon either

12  deviated from Taser Inc.'s intended result/design or how the

13  taser weapon deviated from other seemingly identical taser

14  models." Id. at 1155. Judge Ishii determined that "[a] bare

15  allegation that the taser weapon had 'a manufacturing defect' is

16  an insufficient legal conclusion." Id.

17      Waldo has alleged that "[t]he subject product was not made

18  in accordance with Defendant['s] specifications or performance

19  standards." (Complaint ¶ 58(c).)

20      This allegation is sufficiently-pled. It sets forth a

21  factual proposition - that the drug was not made in accordance

22  with Eli Lilly's specification – from which one can "draw the

23  reasonable inference that the defendant is liable for the

24  misconduct alleged." Iqbal, 556 U.S. at 678. To go further and

25  require Waldo to identify, at the pleadings stage, the defect in

26  a pharmaceutical she ingested more than a decade ago would be to

27  effectively absolve Eli Lilly of any potential liability at the

28  pleadings stage. Absent publicly-available information that Eli

Lilly manufactured defective Prozac during the relevant time period, there is no reasonable way that Waldo could obtain sufficient information, pre-discovery, to identify or explain the nature of the alleged defect. (Even if she retained some of the tablets she had been prescribed, their chemical composition may have changed over time; most pharmaceuticals come with a manufacturer's expiration date.) Years-old pharmaceuticals are quite different from products, such as lawnmowers or automobiles, which are both durable and readily compared to other instances of the product line.

Federal pleading standards set forth minimum requirements for "giv[ing] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, 355 U.S. at 47. To interpret Rule 8(a) so mechanically as to create insurmountable barriers to manufacturers' liability at the pleadings stage would mean a return, in some measure, to common-law pleading standards "better calculated to vindicate highly technical rules of pleading than . . . to dispense justice." 5 Charles Alan Wright & Arthur Miller, Federal Practice & Procedure: Civil § 1202 (3d ed. 2013). This, the court declines to do.

Eli Lilly's motion to dismiss Waldo's second cause of action is therefore denied.

### C. Failure to Warn – Strict Liability

Waldo's third cause of action alleges strict liability for failure to warn.

Pharmaceutical manufacturers may be held strictly liable for failing to warn of known or reasonably scientifically knowable

8

1    risks. <u>Carlin v. Superior Court</u>, 13 Cal. 4th 1104, 1110 (1996).

2    "The rules of strict liability require a plaintiff to prove only

3    that the defendant did not adequately warn of a particular risk

4    that was known or knowable in light of the generally recognized

5    and prevailing best scientific and medical knowledge available at

6    the time of manufacture and distribution." <u>Id.</u> at 1112. "The

7    manufacturer is held to the knowledge and skill of an expert in

8    the field; it is obliged to keep abreast of any scientific

9    discoveries and is presumed to know the results of all such

10   advances." <u>Id.</u> at 1113 n.3. The manufacturer's knowledge is

11   measured at the time of distribution, rather than on the basis of

12   subsequent scientific developments. <u>Id.</u> The duty to warn runs to

13   the physician, not the patient. <u>Id.</u> at 1116.

14        Eli Lilly moves to dismiss on the grounds that the cause of

15   action is insufficiently-pled; specifically, that Waldo failed to

16   allege that Eli Lilly knew (or should have known) of Prozac's

17   risks at the time it distributed the doses that she ingested.

18        Waldo alleges the existence of studies dating from 2007 and

19   afterwards demonstrating an increased risk of birth defects from

20   consumption of SSRIs during pregnancy. (Complaint ¶¶ 32, 33-35.)

21   Waldo also alleges that the manufacturers of Paxil, another SSRI,

22   began including warnings of birth defects with the drug in 2005.

23   (Complaint ¶ 30.) In considering Waldo's failure to warn theory,

24   these allegations are irrelevant, as the events described

25   occurred after the manufacture of the Prozac which Waldo

26   ingested. "[T]he manufacturer is liable if it failed to give

27   warning of dangers that were known to the scientific community at

28   the time it manufactured or distributed the product." <u>Carlin</u>, 13

9

1  Cal. 4th at 1113. The adequacy of a warning is generally a
2  question of fact for the jury. Jackson v. Deft, Inc., 223 Cal.
3  App. 3d 1305, 1313 (1990) (cited for this point in Judicial
4  Council of California Civil Jury Instructions, CACI No. 1205
5  (2013)).

6       The cause of action, then, rests upon these allegations:
7  1. "Upon information and belief, Eli Lilly knew or should have
8      known about the adverse side effects of Prozac as early as
9      1987, but failed to adequately warn the consumer public,
10      physicians, and the Food and Drug Administration (FDA) of
11      these life threatening birth defects." (Complaint ¶ 27.)
12  2. "Defendant knew of the dangerous birth defects associated
13      with Prozac use from the preclinical studies . . .
14      confirming these risks. Defendant took no action to
15      adequately warn [*sic*] or remedy the risks, but instead
16      concealed, suppressed, and failed to disclose the dangers."
17      (Complaint ¶ 41.)
18  3. "Upon information and belief, Eli Lilly was on notice of
19      numerous studies which demonstrated significant harm to
20      fetuses when an SSRI was administered during pregnancy,
21      including increased mortality and cardiac malformations."
22      (Id. ¶ 28.)
23  4. "Further, many observational studies have been conducted
24      showing a statistically significant increase in birth
25      defects associated with the use of Prozac." (Id. ¶ 31.)
26       As pled, the third and fourth allegations are inadequate to
27  support a cause of action for failure to warn, as they do not
28  identify the time frame in which Eli Lilly was on notice as to

1  the relevant studies. This leaves the first and second

2  allegations.

3       Neither the Supreme Court nor the Ninth Circuit has issued a

4  definitive ruling on whether, and under what circumstances,

5  allegations may properly be pled on information and belief under

6  Rule 8, as interpreted by Iqbal and Twombly. Nevertheless, a

7  recent Ninth Circuit opinion, Blantz v. Cal. Dep't of Corr. and

8  Rehab., __ F.3d __, 2013 WL 4105530, 2013 U.S. App. LEXIS 16940

9  (9th Cir. Aug. 15, 2013) provides some guidance on the subject.

10      Blantz concerns a wrongful termination action against the

11 California Department of Corrections and Rehabilitation ("CDCR").

12 The Ninth Circuit panel addressed, *inter alia*, whether plaintiff

13 could properly proceed against Terry Hill, the Chief Medical

14 Officer overseeing CDCR's medical care system. The only

15 allegations concerning Hill were that, "on information and

16 belief," he "direct[ed]" the other defendants to take the

17 challenged actions. The panel dismissed the claims against Hill,

18 not because these allegations were pled on information and

19 belief, but because they were conclusory allegations unsupported

20 by further factual assertions.

21      From Blantz, one can reasonably infer that district courts

22 may properly consider allegations pled on information and belief

23 in determining whether claims have been adequately pled under

24 Rule 8. That an allegation is pled on information and belief is

25 neither dispositive nor particularly germane. Per Iqbal and

26 Twombly, the proper inquiry remains whether the plaintiff has

27 presented a non-conclusory factual allegation. If so, the court

28 may assume the allegation's "veracity and then determine whether

1  [it] plausibly give[s] rise to an entitlement to relief." <u>Iqbal</u>,

2  556 U.S. at 679. This approach is supported by the text of Rule

3  11(b):

4              By presenting to the court a pleading . . .
             an attorney or unrepresented party certifies
5              that to the best of the person's knowledge,
             information, and belief, formed after an
6              inquiry      reasonable      under      the
             circumstances: . . . the factual contentions
7              have evidentiary support or, if specifically
             so identified, will likely have evidentiary
8              support after a reasonable opportunity for
             further investigation or discovery . . . .
9

10  As the court may rely on counsel's certification as to the

11  likelihood of evidentiary support for any allegations pled on

12  information and belief, it appears reasonable to grant such

13  allegations the benefit of the doubt – so long as they are non-

14  conclusory.

15      Waldo, then, has pled that Eli Lilly knew, or should have

16  known, by 1987 about the risk of birth defects from Prozac use

17  based on preclinical studies, but failed to adequately warn of

18  these risks.

19      This pleading is adequate to support a claim for strict

20  liability based on failure to warn. Eli Lilly's motion to dismiss

21  this cause of action is therefore denied.

22              **D. Negligence**

23      Waldo's fourth cause of action alleges negligence.

24      Under California law, the elements of a cause of action for

25  negligence are "'(a) a legal duty to use due care; (b) a breach

26  of such legal duty; [and] (c) the breach as the proximate or

27  legal cause of the resulting injury.'" <u>Ladd v. Cnty. of San</u>

28

1 <u>Mateo</u>, 12 Cal. 4th 913, 917 (1996) (quoting <u>Evan F. v. Hughson</u>

2 <u>United Methodist Church</u>, 8 Cal. App. 4th 828, 834 (1992)).

3       Waldo adequately pleads the first two elements. Eli Lilly's

4 duty is alleged as follows: "Defendant were [*sic*] under a duty to

5 exercise reasonable care in the design, manufacture, testing,

6 processing, marketing, advertising, labeling, packaging,

7 supplying, distribution, and sale of Prozac." (Complaint ¶ 67.)

8       Waldo also pleads numerous breaches of this duty:

9  • "Failure to adequately test the product prior to placing

10    the drug Prozac on the market";

11 • "Failure to conduct adequate pre-clinical testing and

12    post-marketing surveillance to determine the safety of

13    Prozac during pregnancy";

14 • "Failure to advise the medical and scientific

15    communities, including Plaintiff's prescribing physician,

16    of the potential for severe and disabling side effects

17    and birth defects"; and

18 • "Failure to provide adequate post-marketing warnings or

19    instructions after Defendant knew, or should have known,

20    of the significant risks of severe and disabling side

21    effects and birth defects." (Complaint ¶ 70.)

22 Contrary to Eli Lilly's assertions, these are not conclusory

23 allegations of the type forbidden by <u>Iqbal</u> and <u>Twombly</u>. At the

24 pleadings stage, Waldo need not, *e.g.*, detail with specificity

25 what tests Eli Lilly should have undertaken or what information

26 it should have provided physicians regarding product risks.

27       However, Waldo fails to adequately pled causation. She

28 avers, "As a direct and proximate result of Defendant' [*sic*]

negligence, D.P. and Angela Waldo suffered severe and permanent physical and emotional injuries including, but not limited to, VSD." (Complaint ¶ 74.) This statement is a conclusory allegation. Waldo has failed to plead factual allegations supporting the allegation that Eli Lilly's breach of its duty to her was the cause of D.P.'s injuries.

Accordingly, this cause of action will be dismissed, though Waldo will be granted leave to amend.

### E. Negligence – Failure to Warn; Breach of Warranty – Express Warranty; Breach of Warranty – Implied Warranty of Fitness for a Particular Purpose; Breach of Warranty – Implied Warranty of Merchantability

Waldo's fifth cause of action alleges negligence under a failure to warn theory; her sixth cause of action alleges breach of an express warranty; her seventh cause of action alleges breach of the implied warranty of fitness for a particular purpose; and her eighth cause of action alleges breach of the implied warranty of merchantability.

Eli Lilly moves for dismissal of these claims on the grounds that Waldo fails to allege that Eli Lilly knew (or should have known) of Prozac's risks at the time it distributed the doses that she ingested.

This argument fails for the reasons outlined above in the discussion, *supra*, of Waldo's third cause of action, for strict liability under a failure to warn theory. Waldo has adequately alleged Eli Lilly's knowledge.

Eli Lilly's motion to dismiss these causes of action is therefore denied.

14

**F. Punitive Damages**

Waldo's ninth cause of action alleges punitive damages.

Under California law, punitive damages are a remedy, not an independent cause of action. See Cal. Civ. Code § 3294(a) ("In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.").

Accordingly, while Eli Lilly has not moved to dismiss this cause of action, the court will do so *sua sponte*, with prejudice. See Omar v. Sea-Land Service, Inc., 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6).").

**G. Fraud**

Waldo's tenth cause of action alleges fraud.

Under California law, "[t]he elements of fraud, which gives rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Small v. Fritz Companies, Inc., 30 Cal. 4th 167, 173 (2003) (quoting Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996)).

Eli Lilly argues that this claim should be dismissed for failure to meet the particularity requirement of Rule 9(b).

Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting

15

1   fraud or mistake. Malice, intent, knowledge, and other conditions

2   of a person's mind may be alleged generally." In order to plead

3   fraud with particularity, the complaint must allege the time,

4   place, and content of the fraudulent representation; conclusory

5   allegations do not suffice. <u>Moore v. Kayport Package Express,</u>

6   <u>Inc.</u>, 885 F.2d 531, 540 (9th Cir.1989). Claims made on

7   information and belief are not usually sufficiently particular,

8   unless they accompany a statement of facts on which the belief is

9   founded. <u>Neubronner v. Milken</u>, 6 F.3d 666, 672 (9th Cir. 1993).

10      Waldo has failed to plead Eli Lilly's alleged fraud with

11   particularity, as she does not identify the specific fraudulent

12   representations at issue, the medium through which they were

13   conveyed, and whom they were directed to. Allegations such as the

14   following are simply too vague to meet Rule 9(b)'s standards:

> [A]ctions by Defendant include, but are not
> limited to 'Ghostwriting' letters and
> articles for the signature of key opinion
> leaders to be placed in respected medical
> journals, suppressing information about
> Prozac's adverse effects, promoting positive
> study outcomes while avoiding negative ones,
> and communicating marketing messages designed
> to get health care providers to prescribe
> Prozac to patients such as Plaintiff.
> (Complaint ¶ 38.)

22      Waldo also fails to plead facts to support the following

23   statement: "Upon information and belief, Eli Lilly knew or should

24   have known about the adverse side effects of Prozac as early as

25   1987, but failed to adequately warn the consumer public,

26   physicians, and the Food and Drug Administration (FDA) of these

27   life threatening birth defects." (Complaint ¶ 27.)

28

1     As the complaint lacks specific facts demonstrating the

2 alleged fraud, this cause of action must be dismissed, though

3 Waldo will be granted leave to amend her complaint.

4             **H. Negligent Misrepresentation**

5     Waldo's eleventh cause of action alleges negligent

6 misrepresentation.

7     A negligent misrepresentation is "[t]he assertion, as a

8 fact, of that which is not true, by one who has no reasonable

9 ground for believing it to be true." Cal. Civ. Code § 1710.

10 Negligent misrepresentation differs from fraud in that it "allows

11 recovery in the absence of scienter or intent to defraud." <u>Los</u>

12 <u>Angeles Unified School Dist. v. Great Am. Ins. Co.</u>, 49 Cal. 4th

13 739, 750 n. 5 (2010).

14     As it did with Waldo's fraud claim, Eli Lilly moves to

15 dismiss for failure to meet the particularity requirement of Rule

16 9(b).

17     Eli Lilly is correct. The complaint does not delineate the

18 misrepresentations at issue with sufficient particularity.

19     Accordingly, this cause of action must be dismissed, though

20 Waldo will be granted leave to amend.

21             **I. Negligence Per Se**

22     Waldo's twelfth cause of action alleges negligence per se.

23     Eli Lilly seeks to dismiss on the basis that negligence per

24 se is not an independent cause of action under California law.

25     Eli Lilly is correct. "'Negligence per se' is an evidentiary

26 doctrine codified at Evidence Code section 699. Under subdivision

27 (a) of this section, the doctrine creates a presumption of

28 negligence if four elements are established[,]" one of which is

1   the violation of a statute, ordinance, or regulation. <u>Quiroz v.</u>

2   <u>Seventh Ave. Ctr.</u>, 140 Cal. App. 4th 1256, 1285 (2006). Per

3   Witkin, "[t]he doctrine of negligence per se does not provide a

4   private right of action for violation of a statute; instead, it

5   operates to establish a presumption of negligence for which the

6   statute serves the subsidiary function of providing evidence of

7   an element of a preexisting common law cause of action." 6

8   Witkin, <u>Summary of Cal. Law: Torts</u> § 871 (10th ed., 2013

9   supplement).

10      While Waldo is free to allege the facts necessary to entitle

11  her to the evidentiary presumption, she may not plead negligence

12  per se as an independent cause of action. Accordingly, it will be

13  dismissed with prejudice.

14          **J. Unfair and Deceptive Trade Practices**

15      Waldo's thirteenth cause of action alleges unfair and

16  deceptive trade practices under Cal. Bus. & Prof. Code § 17000 *et*

17  *seq*. Cal. Bus. & Prof.Code § 17200 ("UCL") proscribes "unlawful,

18  unfair, or fraudulent business acts and practices." In her

19  opposition, Waldo agrees to voluntarily dismiss this claim. The

20  court will so order.

21        **K. Negligent Infliction of Emotional Distress**

22      Waldo's fourteenth cause of action alleges negligent

23  infliction of emotional distress ("NIED").

24      *Contra* Eli Lilly, California law does support a claim for

25  NIED. But the California Supreme Court has allowed bystanders

26  such as Waldo (as opposed to direct victims) to plead this tort

27  "only if the plaintiff: (1) is closely related to the injury

28  victim, (2) is present at the scene of the injury-producing event

1    at the time it occurs and is then aware that it is causing injury

2    to the victim and, (3) as a result suffers emotional distress

3    beyond that which would be anticipated in a disinterested

4    witness." Thing v. La Chusa, 48 Cal. 3d 644, 647 (1989).

5         Waldo cannot satisfy these elements. She could not have

6    perceived the alleged injury-producing event "at the time it

7    occur[red,]" as the injury occurred *in utero*. California courts

8    require that the perception of the injury-producing event be

9    immediate. "Although a plaintiff may establish presence at the

10   scene through nonvisual sensory perception, someone who hears an

11   accident but does not then know it is causing injury to a

12   relative does not have a viable [bystander] claim for [NIED],

13   even if the missing knowledge is acquired moments later." Ra v.

14   Superior Court, 154 Cal. App. 4th 142, 149 (2007) (internal

15   quotation and citation omitted). "[W]e also reject [plaintiff]'s

16   attempt to expand bystander recovery to hold a product

17   manufacturer strictly liable for emotional distress when the

18   plaintiff observes injuries sustained by a close relative arising

19   from an unobservable product failure. To do so would eviscerate

20   the second Thing requirement." Fortman v. Förvaltningsbolaget

21   Insulan AB, 212 Cal. App. 4th 830, 843-844 (2013). Birth defects

22   caused by pharmaceuticals ingested during pregnancy are, by

23   definition, an "unobservable product failure."

24        Under the circumstances alleged in her complaint, Waldo

25   cannot articulate a claim for NIED against Eli Lilly.

26   Accordingly, this cause of action will be dismissed with

27   prejudice.

28

19

1 **L. Intentional Infliction of Emotional Distress**

2     Waldo's fifteenth cause of action alleges intentional

3 infliction of emotional distress ("IIED").

4     To plead IIED, a plaintiff must allege "(1) extreme and

5 outrageous conduct by the defendant with the intention of

6 causing, or reckless disregard of the probability of causing,

7 emotional distress; (2) the plaintiff's suffering severe or

8 extreme emotional distress; and (3) actual and proximate

9 causation of the emotional distress by the defendant's outrageous

10 conduct. A defendant's conduct is "outrageous" when it is so

11 extreme as to exceed all bounds of that usually tolerated in a

12 civilized community. And the defendant's conduct must be intended

13 to inflict injury or engaged in with the realization that injury

14 will result." Hughes v. Pair, 46 Cal. 4th 1035, 1050–1051 (2009)

15 (internal citations and quotations omitted).

16     Eli Lilly is correct that Waldo largely offers conclusory

17 allegations in support of her IIED cause of action. For example,

18 she avers that "Defendant's conduct directed towards

19 Plaintiff . . . evidenced a willful intention to inflict injury

20 upon Plaintiff, or a reckless disregard for the rights and

21 interests of Plaintiff equivalent to an intentional violation of

22 them." (Complaint ¶ 141.) It is unclear from this allegation, and

23 from the complaint, whether Waldo is contending that Eli Lilly

24 acted intentionally, or with reckless disregard for its

25 customers.

26     Accordingly, Waldo's cause of action for IIED will be

27 dismissed, with leave granted to amend.

28

1          **M.  Unjust Enrichment**

2          Waldo's sixteenth cause of action alleges unjust enrichment.

3          Eli Lilly moves to dismiss, citing caselaw to the effect

4   that unjust enrichment is a remedy sounding in restitution,

5   rather than an independent cause of action.

6          Waldo disagrees, citing cases holding that California law

7   recognizes a cause of action for unjust enrichment.

8          A recent, well-reasoned decision from the Northern District

9   of California examined these competing notions at length, and

10  concluded that an unjust enrichment theory will support an

11  independent claim for relief under California law. See Monet v.

12  Chase Home Fin., LLC, No. C 10-0135, 2010 WL 2486376, 2010 U.S.

13  Dist. LEXIS 59749 (N.D. Cal. June 16, 2010) (Seeborg, J.).

14         While this conclusion reinforces Waldo's position, it is

15  nonetheless unclear whether the complaint as pled can support an

16  unjust enrichment claim. In Monet, Judge Seeborg noted:

17              There are a handful of factual scenarios
18         where a theory of unjust enrichment has
           historically supported a restitutionary
           remedy. [Footnote omitted.] A plaintiff may,
19         for example, advance a claim as an
           alternative to breach of contract damages
20         when the parties have a contract that was
           procured by fraud or is for some reason
21         unenforceable. See McBride v. Boughton, 123
           Cal. App. 4th 379, 388 (2004). Or, where the
22         plaintiff cannot assert title or right to
           possession of particular property, but
23         nevertheless can show just grounds for
           recovering money to pay for some benefit the
24         defendant received from him, "the plaintiff
           has a right to restitution at law through an
25         action derived from the common-law writ of
           assumpsit" (this method implies a contract at
26         law, or a quasi-contract). See Great-West
           Life & Annuity Ins. Co. v. Knudson, 534 U.S.
27         204, 213 (2002) ("Such claims were
           [historically] viewed essentially as actions
28         at law for breach of contract (whether the

                                21

contract was actual or implied).") . Finally,
a plaintiff may seek restitution in equity,
ordinarily in the form of a constructive
trust or an equitable lien, where money or
property "identified as belonging in good
conscience to the plaintiff could clearly be
traced to particular funds or property in the
defendant's possession." Id.

2010 WL 2486376 at *3, 2010 U.S. Dist. LEXIS 59749 at *8-*10.
Having reviewed the complaint, the court cannot determine which
of these three theories – an alternative to contractual damages,
an action in quasi-contract, or restitution in equity - Waldo
contends should apply to the facts of her case, which is, at
bottom, a personal injury action.[4]

Accordingly, this cause of action will be dismissed, and
Waldo granted leave to re-plead it with more specificity if she
so chooses.

**IV.   CONCLUSION**

Based on the foregoing, the court hereby orders as follows:

[1] Plaintiff's first, ninth, twelfth, and fourteenth causes
of action are DISMISSED WITH PREJUDICE.

[2] Plaintiff's fourth, tenth, eleventh, thirteenth,
fifteenth, and sixteenth causes of action are DISMISSED
WITHOUT PREJUDICE.

[3] The remainder of defendant's motion to dismiss is
DENIED.

---

[4] The Monet plaintiff sought to impose a constructive trust on
mortgage payments that the defendants failed to credit to his
account.

22

1

2          [4] Plaintiff is GRANTED leave to file an amended complaint

3      no more than twenty-one (21) days after entry of this order.

4      IT IS SO ORDERED.

5      DATED:  October 7, 2013.

6

7

8                              _____

9                              LAWRENCE K. KARLTON
                               SENIOR JUDGE
10                             UNITED STATES DISTRICT COURT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28